**Jeffrey COHEN, on behalf of himself and all similarly situated employees, Plaintiff,**

v.

**GERSON LEHRMAN GROUP, INC., Defendant.**

**No. 09 Civ. 4352(PKC).**

United States District Court, S.D. New York.

Jan. 7, 2010.

ments relative to the doctrine of res ipsa loquitur.

Douglas Holden Wigdor, Gregory Nicholas Filosa, Scott Browning Gilly, Thompson Wigdor and Gilly, New York, NY, for Plaintiff.

Andrew Jay Schaffran, Michael Jonathan Puma, Morgan, Lewis & Bockius LLP, New York, NY, for Defendant.

## MEMORANDUM AND ORDER

P. KEVIN CASTEL, District Judge.

Plaintiff Jeffrey Cohen, purportedly on behalf of himself and others similarly situated, asserts that defendant Gerson Lehrman Group, Inc. ("Gerson" or "the Company") violated the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 *et seq.,* and New York Labor Law § 663 by Ming to compensate its research associates for hours worked in excess of 40 hours per week. Three motions are now before this Court. First, Gerson moves pursuant to Rule 12(b)(6), Fed.R.Civ.P., to dismiss the plaintiff's claim arising under the New York Labor Law. Second, the plaintiff moves under Rule 12(b)(6) to dismiss Gerson's counterclaims, which assert violations of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and two tort claims under the laws of the State of New York. Third, the plaintiff moves for preliminary certification of his FLSA claims as a collective action, and seeks court-facilitated notice to similarly situated persons and expedited discovery of potential collective action members.

As discussed below, many of the arguments asserted throughout the parties' submissions are properly raised only after a fully developed factual record. Hence, for the reasons explained, Gerson's motion to dismiss the New York Labor Law claim is denied; plaintiff's motion to dismiss Gerson's three counterclaims is denied; and the plaintiff's motion for preliminary certification of the collective action is granted.

## BACKGROUND

For the purposes of this motion to dismiss, the allegations set forth below are accepted as true, with the exception of legal conclusions couched as factual allegations. *See Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009); *South Cherry Street, LLC v. Hennessee Group LLC,* 573 F.3d 98, 100 (2d Cir.2009).

According to the Complaint, plaintiff Jeffrey Cohen is a former research associate employed by the defendant, a firm that provides consulting services to financial services firms and other professional organizations. (Compl. ¶¶ 10, 13.) As a research associate, his main responsibility was to act as a liaison between Gerson's clients and its research experts. (Compl. ¶ 15.) This included performing research tasks delegated by more senior employees and clients. (Compl. ¶ 15.)

According to the Complaint, the position of a research associate involved long hours, from 8:30 a.m. until 7:30 p.m., and often later. (Compl. ¶¶ 20–23.) These hours would extend beyond the Company's official office hours of 8:30 a.m. to 6 p.m., and, on occasion, research associates would be reprimanded for leaving work as early as 7 p.m. (Compl. ¶¶ 19, 21.) According to the Complaint, the plaintiff and other putative class members frequently worked between 50 and 60 hours per week. (Compl. ¶ 24.)

In December 2008, Gerson circulated a memo stating that, effective January 1, 2009, certain employees would be eligible for overtime compensation, "meaning those employees will be classified as 'non-exempt' from the overtime provisions of the Fair Labor Standards Act...." (Compl. ¶ 25.) Such "non-exempt" employees would receive overtime compensation at 1.5 times their hourly rates. (Compl. ¶ 27.) Upon information and belief, the Complaint asserts that the reclassification notice was provided to all of the Company's research associates. (Compl. ¶ 26.)

According to the Complaint, prior to reclassification, Gerson had unlawfully classified its research associates as exempt from overtime requirements under the FLSA and New York Labor Law ("NYLL"). (Compl. ¶¶ 28–29.) Research associates exercise no discretion or independent judgment, instead following instructions of senior personnel. (Compl. ¶ 30.) The reclassification had no connection to a material change in the job responsibilities of Gerson's research associates, the Complaint states, (Compl. ¶ 35.) The Complaint asserts that, prior to reclassification, the Company unlawfully deprived its research associates of overtime pay in violation of the FLSA and the NYLL. (Compl. ¶¶ 37–38.)

The Complaint also asserts that this action should be certified as a collective action under the FLSA, 29 U.S.C. § 216(b), because the responsibilities of other Company research associates were "essentially the same" as the plaintiff's, and because all research associates were unlawfully deprived of overtime pay. (Compl. ¶¶ 40–45.) The Complaint seeks class certification under Rule 23, Fed.R.Civ.P., for the claim brought pursuant to the NYLL. (Compl. ¶¶ 49–59.) As noted above, Gerson now moves to dismiss the NYLL claim and opposes the plaintiff's motion for preliminary certification of an FLSA collective action.

Gerson has asserted counterclaims that allege wrongdoing by the plaintiff. According to Gerson's Amended Answers, Defenses and Counterclaims filed on October 1, 2009 (the "Counterclaims"), the plaintiff voluntarily resigned from the Company effective April 24, 2009, just before the commencement of this lawsuit. (Countercl. ¶¶ 1, 3, 19–20.) Prior to leaving the Company, plaintiff began to prepare for this lawsuit, and forwarded via e-mail various documents and communica-

tions from his Company computer for his personal use. (Countercl. ¶¶ 21–23.) Gerson contends that plaintiff also deleted messages and materials from his Company-provided computer, including materials that he had already forwarded to himself. (Countercl. ¶¶ 23–26.) During the course of litigation, Gerson has been unable to restore these deleted materials. (Countercl. ¶¶ 36–37.) The Company contends that the plaintiff's conduct amounts to a violation of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030, as well as the torts of conversion and trespass to chattel. (Countercl. ¶¶ 40–56.) Plaintiff moves to dismiss the counterclaims.

## STANDARD GOVERNING A MOTION TO DISMISS

Rule 8(a)(2), Fed.R.Civ.P., requires " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)) (ellipsis in original). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must provide the grounds upon which the claims rest, through factual allegations sufficient to raise a right to relief above the speculative level. *ATSI Communications, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007) (citing *Twombly,* 127 S.Ct. at 1965). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. "The plausibility standard ... asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Legal conclusions and "[t]hreadbare recitals of the elements of a cause of ac-

tion" do not suffice to state a claim, as "Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1949–50.

The Supreme Court has described the motion to dismiss standard as encompassing a "two-pronged approach" that requires a court first to construe a complaint's allegations as true, while not bound to accept the veracity of a legal conclusion couched as a factual allegation. *Id.* Second, a court must then consider whether the complaint "states a plausible claim for relief," which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*DISCUSSION*

I. *Gerson's Motion to Dismiss Plaintiff's New York Labor Law Claim is Denied.*

Gerson sets forth three principal arguments as to why plaintiff's claim under New York Labor Law § 663 should be dismissed. It argues that New York CPLR 901(b) does not allow for NYLL class actions, an opt-out class under the NYLL conflicts with the FLSA's "opt in" requirement and therefore is preempted, and, as pleaded, the purported class cannot satisfy threshold requirements of Rule 23, Fed.R.Civ.P. I address each of these arguments in turn.

A. *CPLR 901(b) Does Not Bar Plaintiff's New York Labor Law Claim.*

CPLR 901(b) states: "Unless a statute creating or imposing a penalty, or a minimum measure of recovery, specifically authorizes the recovery thereof in a class action, an action to recover a penalty or minimum measure of recovery created or imposed by statute may not be maintained in a class action." Under prevailing New York authority, "a statute imposes a penalty when the amount of damages that may be exacted from the defendant would exceed the injured party's actual damages." McKinney's CPLR, Practice Commentaries, § 901, at 104 (2006). New York Labor Law § 198(1-a) permits a party injured by way of a NYLL violation to receive "an additional amount as liquidated damages equal to twenty-five percent of the total amount of wages found to be due. . . ." Gerson contends that section 198(1–a) establishes a penalty, and that the plaintiff's NYLL claims therefore are barred by CPLR 901(b).

The First Department has, however, upheld the viability of a class action asserting NYLL violations, under the theory that any party who elects to seek liquidated damages—a "penalty" within the meaning of CPLR 901(b)-may opt out of the class. *Pesantez v. Boyle Environmental Services, Inc.,* 251 A.D.2d 11, 673 N.Y.S.2d 659 (1st Dep't 1998) ("To the extent certain individuals may wish to pursue punitive claims pursuant to Labor Law § 198(1–a), which cannot be maintained in a class action (CPLR 901[b]), they may opt out of the class action."); *see also Jacobs v. Macy's East, Inc.,* 17 A.D.3d 318, 320, 792 N.Y.S.2d 574 (2d Dep't 2005) (describing as "without merit" the argument that CPLR 901(b) bars class actions asserting NYLL claims) (collecting cases). Consistent with the holding of *Pesantez,* several courts in this district have concluded that NYLL overtime claims may be brought as class actions, since opt-outs may proceed with their liquidated damages claims. *See, e.g., Krichman v. J.P. Morgan Chase & Co.,* 2008 WL 5148769, at *2 (S.D.N.Y. Dec. 8, 2008) ("New York appellate courts have repeatedly affirmed the right of plaintiffs to form a class after waiving statutory penalties available to them."); *Iglesias–Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 373 (S.D.N.Y.

2007) (contention that New York Labor Law does not permit class actions "has been repeatedly rejected by the courts.") (collecting cases).

Gerson contends, *inter alia,* that federal and state courts have wrongly interpreted the preclusive effect of CPLR 901(b) on NYLL class actions. However, "when interpreting state statutes federal courts defer to state courts' interpretation of their own statutes." *United States v. Fernandez–Antonia,* 278 F.3d 150, 162 (2d Cir. 2002). Gerson has not set forth a persuasive basis to depart from what appears to be a line of settled precedent in the courts of New York.

Gerson also argues that *Carter v. Frito–Lay, Inc.,* 74 A.D.2d 550, 425 N.Y.S.2d 115 (1st Dep't 1980), *aff'd,* 52 N.Y.2d 994, 438 N.Y.S.2d 80, 419 N.E.2d 1079 (1981), which held that a NYLL class action claim was barred by CPLR 901(b), governs this case and requires dismissal. Yet the class in *Carter* specifically sought relief under the NYLL's liquidated damages statute. *See also Ballard v. Community Home Care Referral Service, Inc.,* 264 A.D.2d 747, 748, 695 N.Y.S.2d 130 (2d Dep't 1999) ("The fact that the plaintiff's complaint contains a claim for liquidated damages precludes class action relief."). Here, as in the opinions cited above, plaintiffs do not seek liquidated damages, and in their submissions have disclaimed any possible right to liquidated damages under the NYLL. *See* Compl. ¶ 73 ("As to the New York Class only, no penalties (statutory or otherwise), liquidated damages or punitive damages of any kind under New York law are sought in this action and are expressly waived.").[1]

Gerson's motion to dismiss on CPLR 901(b) grounds is denied.

**B.** *Gerson Has Not Established that the FLSA Preempts the NYLL.*

Gerson also argues that the NYLL claim should be dismissed because the NYLL is impliedly preempted by federal law. According to Gerson, the FLSA's opt-in mechanisms for class members conflicts with the NYLL's opt-out class procedure.

In rejecting a preemption challenge directed toward Connecticut's overtime laws, the Second Circuit held that the FLSA "explicitly permits states to mandate greater overtime benefits" than those recognized in the FLSA federal scheme. *Overnite Transportation Co. v. Tianti,* 926 F.2d 220, 222 (2d Cir.) (citing 29 U.S.C. § 218(a)), *cert. denied,* 502 U.S. 856, 112 S.Ct. 170, 116 L.Ed.2d 133 (1991). "We also note that every Circuit that has considered the issue has reached the same conclusion—state overtime wage law is not preempted by the [Motor Carrier Act] or the FLSA." *Id.* (collecting cases). *Overnite Transportation* continues to be followed by courts in this District confronting FLSA preemption arguments. *See, e.g., Segal v. Varonis Systems, Inc.,* 601 F.Supp.2d 551, 554 (S.D.N.Y.2009) (" 'It is settled in the Second Circuit that FLSA does not preempt state wage and hour laws.' ") (quoting *Guzman v. VLM Inc.,* 2008 WL 597186, at *10 (E.D.N.Y.2008)).

■ Gerson sets forth no basis to depart from *Overnite Transportation* and its progeny. It asserts that the NYLL's opt-out class action mechanism is in irreconcilable conflict with the FLSA's opt-in mechanism. However, as Judge Daniels has observed, "there is a reasoned line of authority in this circuit supporting the con-

---

**1.** I need not presently decide whether the willingness of the would-be class representative and his counsel to waive such claims reflects adversely upon their claim that they

"will fairly and adequately protect the interests of the class ...." Rule 23(a)(4), Fed. R.Civ.P.

clusion that separate FLSA and state law classes can be simultaneously certified." *Krichman,* 2008 WL 5148769, at *3 (collecting cases). For instance, in *Gardner v. Western Beef Properties, Inc.,* 2008 WL 2446681, at *4 (E.D.N.Y. June 17, 2008), Chief Judge Dearie noted that nothing in the text or legislative history of the FLSA reflects a purpose "to undermine those coexisting state rights by denying employees access to the tools of the modern class action of today." *Gardner* also concluded that FLSA preemption arguments were "settled" by *Overnite Transportation. Id.,* at *2.

■ Gerson's motion to dismiss the NYLL claim on the basis that it is preempted by the FLSA is denied.[2]

### C. *Gerson's Arguments Directed to Class Action Allegations Should Be Resolved as Part of a Class Certification Motion.*

Also in support of its motion to dismiss, Gerson offers three grounds for dismissal more commonly raised in opposition to a motion for class certification. Plaintiff has not yet moved to certify a class. Gerson, however, contends that (1) the plaintiff cannot satisfy the numerosity requirement of Rule 23, (2) the plaintiff is an inadequate class representative, and (3) a class action is not superior to other methods of adjudicating plaintiffs claims.

In many circumstances, it may be "inappropriate to make a preliminary assessment of the merits of a case in order to determine if it could be maintained as a class action." *Schweizer v. Trans Union Corp.,* 136 F.3d 233, 239 (2d Cir.1998) (cit-

ing *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)); *see also Indergit v. Rite Aid Corp.,* 2009 WL 1269250, at *4 (S.D.N.Y. May 4, 2009) ("In short, once a named plaintiff establishes individual standing, the issue of whether a named plaintiff can assert claims on behalf of absent class members is determined at the class certification stage of the litigation."); *Gardner,* 2008 WL 2446681, at *4 ("Because this is decided as a motion to dismiss or strike and no motion for certification by plaintiff is pending, the Court need not reach defendant's arguments addressed to the particular requirements of Rule 23.").

■ A more complete factual record would facilitate Gerson's arguments directed to the merits of the proposed class and plaintiff's adequacy as a class representative. Gerson's motion to dismiss the class allegations on the grounds of lack of numerosity, superiority and adequacy is denied, without prejudice to its right to oppose class certification on these same grounds.

### II. *Plaintiff's Motion to Dismiss the Counterclaims is Denied.*

The plaintiff moves to dismiss all counterclaims asserted by Gerson. He argues that Gerson fails to stated a claim for any violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (the "CFAA"), and that the state-law counterclaims for conversion and trespass to chattels should be dismissed for lack of supplemental jurisdiction, or, alternatively, for failure to state a claim. For the reasons

---

**2.** I also reject Gerson's argument that dismissal is required by the Rules Enabling Act, 28 U.S.C. § 2072, *et seq.,* which forbids a federal court from applying a procedural rule to "abridge, enlarge or modify any substantive right." *Id.* § 2072(b). As Judge Lynch

held in *Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152, 164 (S.D.N.Y.2008), a state-law class of opt-out plaintiffs "does not 'abridge, enlarge or modify' the rights conferred by the FLSA" and its opt-in mechanism.

stated below, the plaintiff's motion to dismiss the counterclaims is denied.

### A. Plaintiff's Motion to Dismiss the CFAA Counterclaim is Denied.

The CFAA is a criminal statute that provides for a private right of action. 18 U.S.C. § 1030(g). A private cause of action can stand only if a plaintiff establishes a violation of one of the factors set forth at section 1030(c)(4)(A)(i)(I–V). *Id.* Those factors include the "loss to 1 or more persons during any 1–year period ... aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I). "Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages." 18 U.S.C. § 1030(g).

■ In the Counterclaims, Gerson asserts that plaintiff's "mass deletion" resulted in "lost revenue, costs incurred, and other consequential damages" totaling more than "$5,000 within a one-year period." (Countercl. ¶¶ 38–39.) Although the Counterclaims do not further particularize the sources of Gerson's claimed loss, Gerson's assertion is neither conclusory nor legal in nature, and therefore is entitled to a presumption of truth pursuant to *Iqbal,* 129 S.Ct. at 1949–50. Because the Counterclaims allege loss greater than $5,000 in a one-year period, plaintiff's assertion is sufficient under section 1030(c)(4)(A)(i)(I). To the extent that plaintiff asserts that the losses "appear" to include "damages that are not recoverable under the CFAA," (Pl. Mem. at 11) the factual nature of the alleged loss is more appropriately raised at summary judgment or at trial, following the development of a clear factual record.

The plaintiff offers various other theories in support of its motion to dismiss Gerson's CFAA claim. They concern issues such as the lawful authorization of plaintiff's computer access, and cite to the plaintiff's deposition testimony concerning his computer activities. (Pl. Mem. at 16–22.) Again, such considerations have no place on a motion to dismiss. Evidence that purported to contradict or support the content of pleadings is more properly considered at summary judgment or at trial, and has no place in a Rule 12(b)(6) motion.

The plaintiff's motion to dismiss the counterclaim asserting violations of the CFAA is denied. Because I decline to dismiss the CFAA counterclaim, I need not address plaintiff's argument that the Court should decline to exercise supplemental jurisdiction over the remaining two state-law counterclaims.

### B. Plaintiff's Motion to Dismiss the State Law Counterclaims is Denied.

■ Plaintiff argues that the Counterclaims fail to state claims for the common-law torts of conversion and trespass to chattels. In support of his motion, the plaintiff contends that deposition testimony shows the counterclaims to be meritless, and sets forth assertions of fact as to whether items of information were, in fact, permanently deleted from Gerson's computers. (Pl. Mem. at 22–25.) Issues of fact are "not resolvable on a Rule 12(b)(6) motion." *Todd v. Exxon Corp.,* 275 F.3d 191, 203 (2d Cir.2001). Neither party urges that the motion to dismiss be converted into one for summary judgment. I decline the plaintiff's invitation to weigh the evidence going toward Gerson's state-law counterclaims, and the plaintiff's motion to dismiss them is denied.

### III. Plaintiff's Motion for Preliminary Certification of the FLSA Collective Action is Granted.

The plaintiff moves for preliminary certification of his proposed FLSA collective action. Gerson contends that preliminary

certification should be denied because fact-intensive scrutiny is required to determine whether each research assistant proposed to be eligible for the collective action falls within an administrative-employee exemption to the FLSA. The efficiency purposes of an FLSA collective action are defeated when individualized findings may be necessary, Gerson argues.

■ I begin by surveying the role of a collective action under the FLSA. Article 16(b) of the FLSA states in relevant part that: "An action ... may be maintained against any employer ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). In a collective action under FLSA-unlike in a class action under Rule 23, Fed.R.Civ.P.—only plaintiffs who affirmatively opt into the case can benefit from the judgment or be bound by it. *See Damassia v. Duane Reade, Inc.*, 2006 WL 2853971, at *2 (S.D.N.Y. Oct. 5, 2006); *see also Vogel v. American Kiosk Mgt.*, 371 F.Supp.2d 122, 127 (D.Conn.2005) ("[T]he prevailing view in the Second Circuit, and other Circuits, is that actions ... pursuant to section 216(b) of the FLSA are not subject to Rule 23 requirements and principles."); *Iglesias–Mendoza v. La Belle Farm. Inc.*, 239 F.R.D. 363, 368 (S.D.N.Y. 2007) ("The 'similarly situated' standard ... is thus considerably more liberal than class certification under Rule 23.... [N]o showing of numerosity, typicality, commonality and representativeness need be made.") (quotation omitted).

■ The dominant approach among district courts in this Circuit is to conduct a two-phase inquiry in determining whether potential opt-in plaintiffs are "similarly situated." *See Lynch v. United Services Automobile Ass'n*, 491 F.Supp.2d 357, 367–68 (S.D.N.Y.2007). At the first phase, called the "notice stage," the court makes a preliminary determination based on the plaintiffs' pleadings and affidavits whether potential opt-in plaintiffs are "similarly situated" to the named plaintiffs. *Id.* at 368. Plaintiffs need only make a "modest factual showing" that they and the other putative collective action members "were victims of a common policy or plan that violated the law." *Amendola v. Bristol–Myers Squibb Co.*, 558 F.Supp.2d 459, 467 (S.D.N.Y.2008) (quoting *Realite v. Ark Restaurants Corp.*, 7 F.Supp.2d 303, 306 (S.D.N.Y.1998)). This may be satisfied with "substantial allegations" of a factual nexus between named plaintiffs and potential opt-in plaintiffs with regard to their employer's alleged FLSA violation. *Ayers v. SGS Control Servs., Inc.*, 2004 WL 2978296, at *5 (S.D.N.Y. Dec. 21, 2004); *see also Mendoza v. Casa de Cambio Delgado, Inc.*, 2008 WL 938584, at *2 (S.D.N.Y. Apr. 7, 2008) (in order to meet the "low bar for allegations required for collective action certification," the plaintiff's complaint or affidavits must allege a factual nexus with other employees of the defendant).

■ Indeed, the "[p]laintiff's burden is minimal because the determination that the parties are similarly situated is merely a preliminary one." *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y.2006). At this phase, the court does not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations. *Lynch*, 491 F.Supp.2d at 368–69 (collecting cases). If the plaintiffs meet their burden, the court conditionally certifies the class and authorizes the plaintiffs to send notice to potential collective action members. *See id.* at 368. These potential plaintiffs may then opt in pursuant to

§ 216(b) by filing Consent Forms with the Court. *Id.* In granting preliminary certification to a collective action, court-authorized notice is preferred because "[b]oth the parties and the court benefit from settling disputes about the content of the notice before it is distributed" and because such notice "serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Hoffmann–La Roche, Inc. v. Sperling,* 493 U.S. 165, 172, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).

After discovery, typically on the defendant's motion for decertification, courts engage in the second phase of analysis. *See id.; Iglesias–Mendoza,* 239 F.R.D. at 367. At that point, the court determines on a full record, and under a more stringent standard, whether the additional plaintiffs are, in fact, similarly situated. *See Damassia,* 2006 WL 2853971, at *3. If the court concludes that all plaintiffs are similarly situated, the collective action proceeds to trial; otherwise, the collective action is decertified and the claims of the opt-in plaintiffs are dismissed without prejudice. *See Lee,* 236 F.R.D. at 197.

In an affidavit accompanying this motion, the plaintiff asserts that he was one of approximately 50 research associates employed by Gerson at offices around the country. (Cohen Aff. ¶ 3.) Gerson states that while a research associate, he functioned solely as a liaison between clients and subject-matter experts employed by the Company. (Cohen Aff. ¶¶ 4–5.) Other responsibilities included the solicitation of new business from existing clients, recruiting new subject-matter experts to the Company and hosting educational events geared toward clients. (Cohen Aff. ¶¶ 6–7.) Based on his own experiences and observations, Cohen states that other research associates held similar responsibilities. (Cohen Aff. ¶¶ 7–

8, 16.) In support of his motion for preliminary certification, the plaintiff also submit the affidavit of another former Gerson research associate, Rachel Hoffheimer, who states that she functioned purely as a liaison between clients and Company subject-matter experts, and provided no substantive advice to clients. (Hoffheimer Aff. ¶¶ 3–4.)

Gerson contends that preliminary certification is inappropriate in this case because the duties of Company research associates varied from person to person. Specifically, Gerson argues that at least some research associates performed in an administrative capacity, and are therefore exempt under the FLSA's overtime-pay requirement. *See* 29 U.S.C. § 213(a)(1). It argues that the efficiency goals of a collective action brought under the FLSA would be defeated by "highly individualized, fact-intensive inquiries and analyses" about each individual plaintiff. (Opp. Mem. at 1.) Gerson offers declarations from twelve of its research associates in support of its argument that responsibilities varied from person to person, to such an extent that certification is rendered improper and counter to the purposes of an FLSA collective action.

I now turn to the FLSA's administrative exemption. The Department of Labor has issued guidance as to whether an employee performs in an administrative capacity, and is thus exempt from the FLSA wage-and-hour requirements. The regulations are given controlling weight. *Reich v. John Alden Life Ins. Co.,* 126 F.3d 1, 8 (1st Cir.1997). Pursuant to 29 C.F.R. § 541.200(a), an "employee employed in a bona fide administrative capacity" is defined as a person "(1) [c]ompensated on a salary or fee basis at a rate of not less than $455 per week ... (2) Whose primary duty is the performance of office or non-manual work directly related to the man-

agement or general business operations of the employer or the employer's customers; and (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."

Additional regulations clarify the categories of activity that "directly relate[ ] to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.200(a)(2). For instance, "an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a). Subsection (b) of the same regulation lists categories of employment directly related to management and therefore subject to the administrative exemption, including marketing, research, compliance, and "similar activities."

As to the third prong of section 541.200(a), an employee exercising discretion and independent judgment compares and evaluates "possible courses of conduct," then acts or makes a decision "after the various possibilities have been considered." 29 C.F.R. § 541.202(a). The same regulation offers examples of workplace tasks that involve exercises of discretion and independent judgment:

> whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; ... whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; [or] whether the employee is involved in planning long- or short-term business objectives....

22 C.F.R. § 541.202(b). "The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment." Id. § 541.202(c). "The exercise of discretion and independent judgment also does not include clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work." Id. § 541.202(e).

"Of course, the remedial nature of the statute requires that FLSA exemptions be 'narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit.'" Reich, 126 F.3d at 7 (quoting Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960)). In Davis v. J.P. Morgan Chase & Co., 587 F.3d 529, 531–32 (2d Cir.2009), Judge Lynch surveyed Second Circuit authority as to the administrative exemption, noting that job responsibilities generally fall under the label of either "administrative" or "production." "The line between administrative and production jobs is not a clear one, particularly given that the item being produced ... is often intangible service rather than a material good." Id. at 532; see also Reich, 126 F.3d at 9 ("nonmanufacturing employees can be considered 'production' employees in those instances where their job is to generate (i.e., 'produce') the very product or service that the employer's business offers to the public.").

In Davis, which weighed the application of an administrative exemption at the summary judgment stage, the Second Circuit held that an underwriter's work was not related to management polices or general business operations, "but rather concerns the 'production' of loans—the fundamental

service provided by the bank." 587 F.3d at 534. The court noted that underwriters received pay incentives based on quantifiable measures, which was consistent with employees in production rather than in administration. *Id.* at 534–35. Their work "was primarily functional rather than conceptual," and did not play a role in determining future strategy or the direction of the business. *Id.* at 535. Moreover, the underwriters "were trained only to apply the credit policy as they found it" in their employer's credit guide. *Id.* Because the underwriters did not both 1.) perform work directly related to management policies or general business operations, and 2.) regularly exercise discretion and independent judgment, they were not administrative employees. *Id.* at 537.

*Reich* and *Davis* both arose at the summary judgment stage. It is, indeed, the case that, in a service-industry setting, the determination of whether an employee's responsibilities fall within the "administrative" or "production" category will often require a fact-intensive analysis of employee functions. For instance, *Reich* held that the sale of insurance policies, as opposed to their design or generation, was a core administrative function, 126 F.3d at 10, while *Davis* held that the underwriting of loans was more akin to production of the banking business than to the administration of a business. 587 F.3d at 537.

As Gerson notes, the fact-intensive nature of the administrative exemption analysis has prompted some courts in other jurisdictions to deny preliminary certification to a proposed FLSA collective action. *Diaz v. Electronics Boutique of America, Inc.,* 2005 WL 2654270, at *4–5 (W.D.N.Y. Oct. 17, 2005), concluded that despite identical job titles, employees in different locations and with different supervisors were not similarly situated for FLSA purposes, and would have necessitated individualized

factfindings. Similarly, in *Aguirre v. SBC Communications, Inc.,* 2007 WL 772756, at *15 (S.D.Tex. Mar. 12, 2007), "the fact-intensive nature of the exemption analysis" coupled with the plaintiffs' acknowledgment that employee duties varied between individuals was sufficient to deny preliminary collective action certification. *Accord Evancho v. Sanofi–Aventis,* 2007 WL 4546100, at *5 (D.N.J. Dec. 19, 2007) (denying preliminary certification because evidence indicated that employee responsibilities "may vary among plaintiffs and potential collective action members."); *Holt v. Rite Aid Corp.,* 333 F.Supp.2d 1265, 1274–75 (M.D.Ala.2004) (individualized questions as to administrative exemption warranted denial of preliminary FLSA certification).

It is also the case, however, that courts in this District weighing motions for preliminary FLSA certification have rejected the reasoning of this line of cases. For example, in *Francis v. A & E Stores, Inc.,* 2008 WL 4619858, at *3 (S.D.N.Y. Oct. 16, 2008), Judge Seibel adopted a Report and Recommendation issued by Magistrate Judge Yanthis granting preliminary certification of a proposed collective action, despite defendants' affidavits asserting that employee responsibilities varied despite a common job title. Judge Seibel concluded that a plaintiff needed only to establish that job duties were "similar," not identical, and that it would be inappropriate to rely on defendants' affidavits at an early stage of litigation, prior to the affiants' availability for deposition. *Id. Francis* rejected the analysis of the *Diaz* opinion, observing that it "seem[s] to be against the weight of authority in undertaking that analysis at the first stage of the certification process, rather than evaluating at the decertification stage whether the need for individual analysis makes a collective action inappropriate." *Id.* at *3 n. 3.

Then–District Judge Lynch similarly concluded that discovery was needed to ascertain the extent to which employee responsibilities differed, and granted preliminary certification to a proposed FLSA collective action. *See Damassia,* 2006 WL 2853971. In *Damassia,* the defendant proffered affidavits from 56 individuals who asserted that their job responsibilities differed from those claimed by the plaintiffs. *Id.* at *7. Judge Lynch characterized the evidence as "making a premature argument on the merits" and concluded that "the evidentiary value of the affidavits is sharply limited by the fact that plaintiff had not yet had an opportunity, at the time the instant motion was fully submitted, to depose any of the affiants." *Id.* Similarly, in granting a motion for preliminary certification opposed on the ground that potential opt-in members fell within the FLSA's administrative exemption, this Court concluded that the defendant's argument was "misdirected to the underlying merits of this action." *Davis v. Abercrombie & Fitch Co.,* 2008 WL 4702840, at *10 (S.D.N.Y. Oct. 23, 2008); *see also Searson v. Concord Mortgage Corp.,* 2009 WL 3063316, at *6 (E.D.N.Y. Sept. 24, 2009) ("Although discovery may ultimately show that some part-time mortgage consultants and some full-time mortgage consultants fall into an exemption of the FLSA, or that employment policy was not company wide but set at the branch level, that possibility does not prevent conditional class certification at this time.").

Here, Gerson seeks to counter the assertions set forth in affidavits by the plaintiff and Ms. Hoffheimer by submitting the affidavits of twelve research associates, who variously assert that their own job responsibilities vary from those described by the plaintiff. The plaintiff argues that portions of these affidavits support his contention that other research associates are similarly situated. However, as with *Francis,*

*Damassia* and *Davis,* I decline to wade into a thicket of competing factual assertions at this preliminary stage. "To hold to the contrary would preclude certification of a collective action in any FLSA case where the defendant was asserting an administrative exemption defense." *Neary v. Metro. Property & Casualty Insurance Co.,* 517 F.Supp.2d 606, 621–22 (D.Conn.2007).

The Complaint quotes from Gerson's official description of the research associate position (Compl. ¶¶ 16–17), cites to common hiring criteria for research associates (Compl. ¶ 18), asserts that collective action members had duties and assignments that "were essentially the same as those of Plaintiff" (Compl. ¶ 40), and alleges that 50 or more similarly situated individuals were employed as research associates (Compl. ¶ 46). "Where ... there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies, district courts have routinely certified classes of employees challenging their classification as exempt, despite arguments about 'individualized' differences in job responsibilities." *Damassia,* 250 F.R.D. at 160. As previously noted, Cohen also asserts by affidavit that based on his own experiences and observations, other research associates held similar responsibilities. (Cohen Aff. ¶¶ 8, 16.) The Complaint also alleges upon information and belief that the job reclassification memo announcing eligibility for overtime compensation, "meaning those employee will be classified as 'non-exempt' from the overtime provisions of the [FLSA]," was circulated "only to Defendant's Research Associate employees." (Compl. ¶¶ 25–26.) Thus, according to the Complaint, Gerson itself classified its research associates as members of a common group for FLSA-compliance purposes. Of course, the accu-

racy and weight of this allegation, as well as the parties' competing views of the duties of research associates, will be tested at the close of discovery.

The Complaint and the Cohen Affidavit are sufficient to warrant preliminary certification of a collective action in this case. In so concluding, I reiterate that there is a "low bar for allegations required for collective action certification," *Mendoza,* 2008 WL 938584, at *2, that a plaintiff's burden is "minimal," *Lee,* 236 F.R.D. at 197, and that a court making a preliminary certification determination does not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations. *Lynch,* 491 F.Supp.2d at 368. *See also Hoffmann–La Roche,* 493 U.S. at 174, 110 S.Ct. 482 ("trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action").

Lastly, I authorize notice to potential opt-in class members. Section 216(b) does not expressly provide for court-authorized notice to potential opt-in plaintiffs in a collective action, but it is well settled that district courts have the power to authorize an FLSA plaintiff to send such notice. *See Id.* at 170–71, 110 S.Ct. 482; *Braunstein v. E. Photographic Labs., Inc.,* 600 F.2d 335, 336 (2d Cir.1978). By authorizing notice, the court thereby "certifies" the collective action. *See Damassia,* 2006 WL 2853971, at *2; *Lee,* 236 F.R.D. at 197.

■ The FLSA has a two-year statute of limitations except in the case of willful violations, for which the statute of limitations is three years. *See* 29 U.S.C. § 255(a). The Second Circuit has explained that "a violation is willful for purposes of the FLSA limitations provision only if the employer knowingly violates or shows reckless disregard for the provisions of the Act." *Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1062 (2d Cir.1988). Plaintiff contends that the contents of any notice should provide for a three-year statute of limitations afforded to claims of willful violations of the FLSA, as opposed to a two-year limitations period.

■ Although Gerson opposes the motion for preliminary certification and opposes certain statements in the plaintiff's proposed notice to the class, it does not address whether, at this stage of the litigation, a three-year notice period is appropriate. Courts routinely approve a three-year notice period. *See, e.g., Iglesias–Mendoza,* 239 F.R.D. at 369 ("Where wilfulness is disputed, the court applies the three-year statute of limitations for purposes of certifying a representative action."); *Anglada v. Linens 'N Things, Inc.,* 2007 WL 1552511, at *8 (S.D.N.Y. May 29, 2007) ("[W]here there has been no substantive discovery as to the appropriate temporal scope of the prospective class of member plaintiffs, and where the Plaintiff has alleged a willful violation of the FLSA, it is prudent to certify a broader class of plaintiffs that can be limited subsequently, if appropriate, during the second phase of the collective action certification process."); *Fasanelli v. Heartland Brewery, Inc.,* 516 F.Supp.2d 317, 323 (S.D.N.Y.2007) (conditionally certifying class based on three-year period to "avoid any merit-based determinations at this time" but noting the possibility of "decertification at a later time"). I conclude that a three-year notice period is appropriate here.

Lastly, Gerson contends that the proposed text of plaintiffs notice to potential opt-ins is not fair and accurate, and argues that the parties should confer on the contents of the notice. The parties are directed to confer and to make a good-faith

effort to agree to the text of the proposed notice to opt-ins in advance of the next pretrial conference. The notice to the potential opt-in plaintiffs shall prominently and explicitly advice would-be class members that (1) they may have a viable claim for liquidated damages under the NYLL, and (b) by joining the collective action, they are foreclosed from pursing said claims. At the conference, which is scheduled for 12 p.m. on January 20, 2010, I will also hear further argument from the parties as to the appropriateness of expedited discovery.

CONCLUSION

Plaintiff's motion for preliminary certification of the collective action is GRANTED. (Docket # 10.)

Defendant's motion to dismiss or strike the plaintiff's state-law claim is DENIED. (Docket # 16.)

Plaintiff's motion to dismiss the defendant's counterclaims is DENIED. (Docket # 54.)

The parties are directed to confer on the contents of the proposed notice to potential opt-in plaintiffs in advance of the pretrial conference scheduled for 12 p.m. on January 20, 2010.

SO ORDERED.