**JEONG WOO KIM, Plaintiff,**

v.

**511 E. 5TH STREET, LLC d/b/a Goat Town, Nicholas Morgenstern, and Joel Hough, Defendants.**

No. 12 Civ. 8096(FM).

United States District Court, S.D. New York.

Dec. 3, 2013.

Anne Melissa Seelig, C.K. Lee, Shin Young Hahn, Lee Litigation Group, PLLC, New York, NY, for Plaintiff.

Kevin Sean O'Donoghue, Smith Mazure Director Wilkins Young and Yagerman, New York, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

FRANK MAAS, United States Magistrate Judge.

Plaintiff Jeong Woo Kim ("Kim") brings this putative collective action on behalf of

himself and other similarly-situated persons, seeking to recover unpaid minimum wages and overtime compensation pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.,* and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 190 *et seq.* (ECF No. 1).

Kim has moved for: (1) conditional certification of a collective action pursuant to 29 U.S.C. § 216(b); (2) production of the names and personal information of all potential opt-in plaintiffs; (3) court-facilitated notice of the action to all potential opt-in plaintiffs; and (4) authorization to post a proposed notice of the action in the defendants' restaurant. (ECF No. 27 ("Pl.'s Mot.")). For the reasons set forth below, Kim's motion is granted in part and denied in part.

## I. *Factual Background*

Defendants 511 E. 5th Street, LLC, d/b/a Goat Town, Nicholas Morgenstern, and Joel Hough (collectively, the "Defendants") operate a restaurant in Manhattan known as "Goat Town." [1] (See ECF No. 28 (Pl.'s Mem. of Law ("Pl.'s Mem.")) at 2). In early 2012, Kim responded to a job listing posted by the Defendants, expressing his interest in a sous chef position at Goat Town. According to the Defendants, the restaurant was unable to offer Kim a full-time position due to his immigration status, but offered him a "consulting role," pursuant to which he would assist the head chef (the "Chef"). Kim accepted, and began working for the Defendants on April 9, 2012. (*See* ECF No. 35 (Decl. of Nicholas Morgenstern ("Morgenstern"), dated July 12, 2013 ("Morgenstern Decl.")), at 8).

The Defendants allege that, in this role, Kim was a manager exempt from the FLSA's minimum wage and overtime pro-

visions. (*See id.* ¶¶ 7–8). According to Morgenstern, the managing member of 511 E. 5th Street, LLC, the Defendants explained the position's managerial duties to Kim at the start of his employment. Those duties allegedly included supervising other kitchen staff members, providing input for hiring and firing decisions, and ordering and receiving inventory. (*Id.*).

For his part, Kim contends that he spent the majority of his time performing non-managerial tasks such as cleaning the restaurant, washing dishes, and preparing food alongside other kitchen staff members. (*See* ECF No. 29 (Decl. of Jeong Woo Kim, dated May 28, 2013 ("Kim Decl.")), ¶ 3). Kim further maintains that he did not have authority to hire or fire staff members, and was never asked to provide input regarding such decisions. (*Id.*). Kim argues that because his actual job duties did not involve any managerial tasks, he was not exempt from the FLSA minimum wage and overtime provisions. (ECF No. 38 ("Pl.'s Reply Mem.") at 3–4).

The two sides also dispute whether Kim typically worked overtime. Kim alleges that he regularly worked 14 hours per day, at least 5 days per week, for a total of at least 70 hours per week. (Kim Decl. ¶ 2). The Defendants, on the other hand, maintain that Kim "likely worked the usual hours of the cooks and Chef—about 8 hours a day between 3 p.m. and 11 p.m." (Morgenstern Decl. ¶ 9). Although the Defendants do not indicate how many days per week Kim allegedly worked, both sides agree that he was paid on a salaried, rather than an hourly, basis and consequently did not receive overtime pay. According to the Defendants' payroll records, Kim was paid a fixed amount of $550 per week

---

**1.** Two other defendants, Lawrence Hough and Kathleen Hough, were dismissed by stip-

ulation on March 8, 2013. (ECF No. 12).

for the first twelve weeks of his employment, and $400 per week thereafter. (*See* ECF No. 34 (Decl. of Kevin Sean O'Donoghue, dated July 12, 2013 ("O'Donoghue Decl.")) Ex. 3). Kim received his weekly salary in cash. (*See id.*).

Although the parties agree that Kim was paid a fixed weekly salary, they disagree as to the method by which other Goat Town employees were paid. According to the Defendants, all employees other than Kim and the Chef were paid on an hourly basis and "receive[d] overtime at one and one-half their regular rate for all hours worked over 40 hours a week." (Morgenstern Decl. ¶ 5) (parentheses omitted). Kim alleges, however, that all kitchen staff members were compensated on a salaried, rather than an hourly, basis and therefore did not receive overtime pay. Kim bases this assertion on the frequent complaints that he heard from other kitchen staff members who had been denied overtime pay and were not being compensated on an hourly basis. (Kim Decl. ¶ 4). Kim also avers that he "observed" tipped employees receiving less than the minimum wage even though he never observed them "receiving tip credit notice" from the Defendants. (*Id.* ¶ 5). According to Kim, the tipped employees spent twenty percent or more of their time engaging in such "nontipped" activities as cleaning the restaurant. (*Id.*).

Citing his personal observations and conversations with two of his kitchen co-workers—"Dimitri" and "Geraldo"—Kim alleges that he and other Goat Town employees were victims of a common compensation policy that violated the FLSA. (Pl.'s Mem. at 9).[2] Kim also has submitted the declaration of Su Jin Jeon ("Jeon"), a former Goat Town kitchen intern, in support

of his claims. (ECF No. 30 (Decl. of Su Jin Jeon, dated June 10, 2013 ("Jeon Decl.")). Based on these submissions, Kim asks that the Court conditionally certify this matter as a collective action so that he may pursue claims on behalf of both himself and other similarly-situated Goat Town employees.

## II. *Legal Standard*

### A. *FLSA Generally*

The FLSA establishes a minimum hourly wage that employers must pay their employees and requires employers to pay overtime wages, at a rate of one and one-half times an employee's normal hourly rate, for any hours worked in excess of 40 hours in a single week. 29 U.S.C. §§ 206, 207. These requirements, however, are subject to several exemptions.

The Second Circuit has held that, "because the FLSA is a remedial act, its exemptions . . . are to be narrowly construed." *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir.1991). Moreover, because the FLSA's exemptions are affirmative defenses to minimum wage and overtime claims, an "employer bears the burden of proving that its employees fall within an exempted category of the Act." *Id.*

In this case, the Defendants rely on the FLSA exemption applicable to an "employee employed in a bona fide executive . . . capacity." 29 U.S.C. § 213(a)(1). This executive exemption applies to any employee:

(1) [c]ompensated on a salary basis at a rate of not less than $455 per week . . . , exclusive of board, lodging or other facilities; (2) [w]hose primary duty is management of the enterprise in which the

---

**2.** Kim's declaration states that he does not know Dimitri and Geraldo's last names. (*Id.* ¶ 4).

employee is employed or of a customarily recognized department or subdivision thereof; (3) [w]ho customarily and regularly directs the work of two or more other employees; and (4) [w]ho has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100.

### B. *FLSA Collective Action Certification*

■■■ The FLSA authorizes an aggrieved employee to maintain a collective action on behalf of himself and "other employees similarly situated." 29 U.S.C. § 216(b). Such an action is not subject to the class action requirements of Rule 23 of the Federal Rules of Civil Procedure. *Davis v. Lenox Hill Hosp.*, No. 03 Civ. 3746(DLC), 2004 WL 1926086, at *7 (S.D.N.Y. Aug. 31, 2004). Accordingly, there need not be a showing of numerosity, commonality, typicality, or adequacy of representation. *Id.* To bring a collective action, a plaintiff first must show that the defendant's pay practices violated the FLSA. 29 U.S.C. § 216(b). Plaintiffs who wish to participate in that collective action must then "opt-in" by consenting in writing to join the suit and filing their consents with the court in which the original action was brought. *Id.* In keeping with the FLSA's "broad remedial purpose," district courts may facilitate notice to other potential similarly-situated employees to inform them of the opportunity to opt-in. *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 169–70, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).

■■■ Courts in this Circuit employ a two-step process to decide whether to certify a collective action under Section 216(b). *See Myers v. Hertz Corp.*, 624 F.3d 537, 554–55 (2d Cir.2010); *Lynch v. United Servs. Auto. Ass'n*, 491 F.Supp.2d 357, 367–68 (S.D.N.Y.2007). At the first step, the court makes an initial determination as to whether other potential plaintiffs are situated similarly to the named plaintiff with respect to the alleged FLSA violations. *Myers*, 624 F.3d at 555. At the second step, following discovery, the court reconsiders its preliminary determination as to whether the opt-ins are similarly situated. *Id.*

■■■ Although the FLSA itself does not define the term "similarly situated," courts require that there be a "factual nexus between the claims of the named plaintiff and those who have chosen [or might potentially choose] to opt-in to the action." *Davis v. Lenox Hill Hosp.*, 2004 WL 1926086, at *7 (internal quotation marks omitted). The relevant issue is not whether the named plaintiff and potential opt-in plaintiffs are identical in all respects, but, rather, whether they all allegedly were subject to a common employment policy that violated the FLSA. *Raniere v. Citigroup, Inc.*, 827 F.Supp.2d 294, 323 (S.D.N.Y. 2011); *Hoffmann v. Sbarro, Inc.*, 982 F.Supp. 249, 261 (S.D.N.Y.1997) (Sotomayor, D.J.).

■■■ Because the preliminary conditional certification takes place early in the litigation and often before discovery has begun, a named plaintiff need make only a "modest factual showing" that he and other potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." *Sbarro*, 982 F.Supp. at 261. Plaintiffs may satisfy this burden by relying on "their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." *Hallissey v. Am. Online, Inc.*, No. 99 Civ. 3785(KTD), 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008). Indeed, the bur-

den is so low that even one or two affidavits establishing the common plan may suffice. *See, e.g., Hernandez v. Bare Burger Dio Inc.*, No. 12 Civ. 7794(RWS), 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) (named plaintiff's affidavit); *Cohen v. Gerson Lehrman Grp., Inc.*, 686 F.Supp.2d 317, 331 (S.D.N.Y.2010) (two affidavits). Unsupported assertions in the pleadings, however, cannot satisfy a plaintiff's burden. *Myers*, 624 F.3d at 555.

When there are ambiguities in the papers seeking collective action status, the court must "draw all inferences in favor of the [p]laintiff" at the preliminary certification stage. *Mendoza v. Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629(KPF), 2013 WL 5211839, at *4 (S.D.N.Y. Sept. 16, 2013) (quoting *Jenkins v. TJX Cos. Inc.*, 853 F.Supp.2d 317, 322 (E.D.N.Y.2012)). Thus, at this stage, the court may not "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Lynch*, 491 F.Supp.2d at 368; *see also Hoffmann–La Roche*, 493 U.S. at 174, 110 S.Ct. 482 ("[T]rial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action."). Nor should the court "weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." *Lynch*, 491 F.Supp.2d at 368. The court's limited role at this stage is simply to determine whether the plaintiff has sufficiently alleged that he and other employees were victims of a common compensation policy that violated the FLSA. *Id.* Accordingly, if the plaintiff's allegations are sufficient on their face to support conditional certification, a defendant may not defeat the plaintiff's motion by presenting conflicting factual assertions. *See Colon v. Major Perry Street Corp.*, No. 12 Civ. 3788(JPO), 2013 WL 3328223, at *5 (S.D.N.Y. July 2, 2013) ("Defendants ... may not defeat a court's determination that [p]laintiffs are similarly situated by submitting their own affidavits."); *Winfield v. Citibank, N.A.*, 843 F.Supp.2d 397, 407 n. 6 (S.D.N.Y.2012) ("[C]ourts in this Circuit regularly conclude that [competing] declarations do not undermine the plaintiff's showing in the first stage of the conditional certification process."); *Jacob v. Duane Reade, Inc.*, No. 11 Civ. 0160(JPO), 2012 WL 260230, at *8 (S.D.N.Y. Jan. 27, 2012) ("The Court ... declines to weigh Plaintiffs' and Defendants' competing testimony at this phase of the litigation." (citations omitted)); *Pippins v. KPMG LLP*, No. 11 Civ. 0377(CM)(JLC), 2012 WL 19379, at *12 (S.D.N.Y. Jan. 3, 2012) ("To balance the parties' competing affidavits at this stage would require the Court to determine the facts, determine credibility of the affiants, and resolve legal contentions, all of which the conditional certification and potential later decertification process is structured so as to avoid.").

Once notice has been sent to the potential opt-in plaintiffs and after discovery closes, the court may entertain a defendant's motion to de-certify the action. This second stage of the process involves a "more stringent factual determination," *Lynch*, 491 F.Supp.2d at 368, which requires the court, "on a fuller record, [to] determine whether a [collective action] may go forward [because] the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs," *Myers*, 624 F.3d at 555. If the opt-in plaintiffs are revealed not to be similarly situated, the court may decertify the class and dismiss the opt-in plaintiffs' claims without prejudice. *Id.*

### III. *Discussion*

#### A. *Conditional Collective Action Certification*

For the reasons set forth below, Kim has made the requisite "modest factual

showing" that he and *other kitchen staff members* were "victims of a common policy or plan that violated the law." *Sbarro*, 982 F.Supp. at 261. Kim has not, however, established that he is situated similarly to any of the other Goat Town employees, including porters, waiters, runners, bussers, and bartenders. Kim's motion for conditional certification therefore is granted in part and denied in part.

### 1. *Kim's Individual FLSA Claims*

■ To bring a collective action, Kim first must show that he, himself, was a victim of the Defendants' illegal pay practices. *See Vengurlekar v. Silverline Techs., Ltd.*, 220 F.R.D. 222, 230 (S.D.N.Y. 2003) (denying collective action certification where named plaintiffs were exempt from the FLSA's requirements). In his declaration, Kim states that he regularly worked at least 70 hours per week, but always received a fixed weekly salary, without regard to the number of hours he actually worked. (Kim Decl. ¶ 2). The payroll records submitted by the Defendants confirm that Kim was paid on a salaried, rather than an hourly, basis, and that he never received overtime compensation. (O'Donoghue Decl. Ex. 3). Based on the number of hours he allegedly worked each week, and the amount he was paid, Kim claims to have been subject to both minimum wage and overtime violations. The Defendants advance several arguments in opposition to these claims.

■ The Defendants first argue that Kim himself cannot assert any claims under the FLSA because, rather than being an "employee" of Goat Town, he was merely an "independent contractor." (*See* Defs.' Mem. at 10–11). This issue, which will come into play at the merits stage, will turn on such factors as (a) the degree of control that Goat Town management exercised over Kim, (b) the degree of skill and independent initiative required to perform Kim's job, (c) the permanence or duration of the working relationship between Kim and Goat Town, and (d) the extent to which Kim's work was an integral part of Goat Town's business. *See Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058–59 (2d Cir.1988). The Court, however, need not engage in this inquiry now. At this preliminary stage, whether Kim will eventually succeed on the merits of his FLSA claim is immaterial. *See, e.g., Lynch*, 491 F.Supp.2d at 368 (court must not "weigh the merits of the underlying claims" at the preliminary certification stage). Accordingly, if the Defendants wish to pursue the argument that a sous chef whom they kept on their payroll was not, in fact, their employee, they may—but they must do so at a later stage. Their effort to raise that defense now in opposition to Kim's motion is premature. *See LeGrand v. Educ. Mgmt. Corp.*, No. 03 Civ. 9798(HB)(HBP), 2004 WL 1962076, at *2 (S.D.N.Y. Sept. 2, 2004) ("To the extent that defendants are attempting [to] argue the merits of the case, they are raising an issue that is not material to the current application.").

■ The Defendants also argue that, even if Kim could be considered an employee of Goat Town, he was exempt from the FLSA minimum wage and overtime requirements because his sous chef role required him to perform managerial tasks that brought him within the executive exemption. Once again, to the extent that the Defendants attempt to prevail on the merits of Kim's individual FLSA claims in response to his motion for conditional collective action certification, their contentions are irrelevant. They are asking the Court to undertake the very type of premature merits determination that is proscribed at the preliminary certification stage. *See Lynch*, 491 F.Supp.2d at 368.

In sum, through his declaration alone, Kim has adequately alleged that he was

subject to minimum wage and overtime violations. The Defendants may not impeach Kim's showing at this juncture. The only remaining question presented by Kim's motion therefore is whether there are other similarly-situated potential plaintiffs.

### 2. *Other Similarly–Situated Potential Plaintiffs*

■ Kim has alleged that, despite his "sous chef" job title, he regularly performed the same sort of non-managerial tasks as other kitchen staff members, including cleaning the restaurant, washing dishes, and preparing food. (Kim Decl. ¶¶ 3, 4). His contentions in that regard are corroborated by the declaration of Jeon, the former kitchen intern at Goat Town, who alleges that during the course of her employment, she personally "observed that other kitchen staff did work that was the same or similar to the work [ ] Kim did." (Jeon Decl. ¶ 4).

Kim also has adduced evidence that he and other kitchen staff members were compensated in a similar manner. In his own declaration, Kim states that while he was employed at Goat Town, he observed other kitchen staff members, including Dimitri and Geraldo, being paid on the same fixed salary basis that he was paid. (Kim Decl. ¶¶ 3, 4). Kim also states that he personally discussed the Defendants' pay practices with Dimitri, who "often complained ... that he was working more than 40 hours each week, but was not paid overtime." (*Id.* ¶ 4). These allegations are corroborated by Jeon, who claims to have regularly worked 44 hours each week, but to have been paid for only 40 hours. (Jeon Decl. ¶ 2). Jeon also allegedly "observed that it was the Defendants' policy to pay kitchen staff on a salary rather than on an hourly basis." (*Id.*). Kim thus has adequately alleged that he and the other kitchen staff members were victims of a common compensation policy that violated the FLSA. None of the Defendants' arguments to the contrary suffice to defeat collective action certification.

The Defendants first mistakenly argue that Kim's personal observations are the "type of 'unsupported assertions ... that cannot satisf[y]' [his] burden." (Defs.' Mem. at 10 (quoting *Myers*, 624 F.3d at 555)). In advancing this argument, the Defendants rely principally on *Ikikhueme v. CulinArt, Inc.*, No. 13 Civ. 293(JMF), 2013 WL 2395020 (S.D.N.Y. June 3, 2013), in which Judge Furman recently denied another sous chef's motion for conditional certification. (Defs.' Mem. at 8–9). Virtually the only commonality between *Ikikhueme* and this case is that both involve sous chefs. In *Ikikhueme*, the plaintiff sought collective action certification on behalf of sous chefs employed by a national company at approximately 200 different locations. *Id.* at * 1. The most that the plaintiff was able to say about the other sous chefs, however, was that it was his "understanding" that they "had similar duties and responsibilities and also were not managers." *Id.* at *2. Notably, the plaintiff failed to set forth any basis for his alleged understanding and did not submit any affidavits from any sous chefs at the other locations. Given the plaintiff's ineffectual attempt to show that the other sous chefs were similarly situated, Judge Furman, not surprisingly, concluded that the plaintiff's "unsupported assertion[s]" failed to satisfy his burden at the preliminary certification stage. *Id.*

Here, by comparison, Kim seeks collective action status on behalf of a relatively small number of individuals, all of whom worked at a single location. Moreover, Kim relies not only on his own observations, but on statements made by other potential opt-in plaintiffs, who allegedly told Kim that they were being paid on a

salaried basis and never received overtime compensation. The fact that these allegations may be based on hearsay does not diminish their value at this stage in the litigation. *See Salomon v. Adderley Indus., Inc.,* 847 F.Supp.2d 561, 563 (S.D.N.Y.2012) ("[C]ourts regularly rely on ... hearsay statements in determining the propriety of sending notice" in FLSA conditional certification cases). For this reason, the Defendants' effort to rely on *Ikikhueme* is misplaced.

Moreover, contrary to the Defendants' assertions, Kim has adduced evidence beyond his own personal observations. As noted previously, he has submitted the declaration of Jeon, who alleges that she was not paid overtime and that it was Goat Town's "policy" to pay its kitchen staff a flat salary. (Jeon Decl. ¶ 2). Although a second declaration is not necessary, the declarations of Kim and Jeon, together, are more than sufficient to satisfy Kim's minimal burden at the preliminary certification stage. *See Hallissey,* 2008 WL 465112, at *1 (to satisfy his first-step burden, a plaintiff may rely on "[his] own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members."); *Cohen,* 686 F.Supp.2d at 331 (conditional certification granted based on two corroborating affidavits); *Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.,* No. 12 Civ. 0265(PAE), 2012 WL 1981507, at *1 (S.D.N.Y. June 1, 2012) (conditional collective certification granted based on a single employee's affidavit alleging that she and other employees who performed work "similar" to hers were paid less than the statutory minimum and not compensated for overtime); *Bowens v. Atlantic Maint. Corp.,* 546 F.Supp.2d 55, 82 (E.D.N.Y.2008) (conditional certification granted despite lack of any corroborating evidence other than employee's own affidavit).

Largely ignoring the applicable case law, the Defendants seek to defeat conditional certification by submitting their own evidence allegedly establishing that Kim's status at Goat Town was *sui generis* and that every other Goat Town employee was paid according to the law. For example, through the Morgenstern declaration, the Defendants allege that Kim was one of only two exempt employees at Goat Town, and that every other employee was compensated on an hourly basis and received overtime pay for all hours worked in excess of 40 hours per week. (Morgenstern Decl. ¶¶ 5, 13). The Defendants also rely on the declaration of Gerardo Gonzalez, a Goat Town cook. In that declaration, Gonzalez says that he is compensated on an hourly basis and receives overtime pay when appropriate. (ECF No. 36 (Decl. of Gerardo Gonzalez, dated July 12, 2013 ("Gonzalez Decl.")), ¶¶ 4, 5). Finally, the Defendants maintain that certain specimen payroll records show that all of the Goat Town employees other than Kim and the Chef were paid on an hourly basis and received proper overtime compensation.

Once again, through their various submissions, the Defendants are asking the Court to resolve factual disputes at the preliminary certification stage. As noted earlier, this is not a task the Court should undertake. *See, e.g., Winfield v. Citibank, N.A.,* 843 F.Supp.2d 397, 407 n. 6 (S.D.N.Y.2012) ("[C]ourts in this Circuit regularly conclude that [competing] declarations do not undermine the plaintiffs' showing in the first stage of the conditional certification process."); *Pippins,* 2012 WL 19379, at *12 (refusing to balance parties' competing affidavits at preliminary certification stage); *Cohen,* 686 F.Supp.2d at 330 (declining to "wade into a thicket of competing factual assertions at this preliminary stage"); *Davis v. Abercrombie & Fitch Co.,* No. 08 Civ. 1859(PKC), 2008 WL 4702840, at *7 (S.D.N.Y. Oct. 23, 2008)

(dueling declarations raise a "factual dispute which the Court cannot resolve at this stage and on this limited record.").[3]

Finally, the Defendants argue that this action cannot be conditionally certified because, as proposed, the action would include both exempt and non-exempt employees. Relying on Judge McMahon's decision in *Romero v. H.B. Automotive Group, Inc.*, No. 11 Civ. 386(CM), 2012 WL 1514810 (S.D.N.Y. May 1, 2012), the Defendants argue that there is no factual nexus among potential opt-ins when a proposed collective action would include some employees who are classified as exempt and others who are classified as non-exempt. (Defs.' Mem. at 16).

The plaintiff in *Romero* was an "Inventory Manager" at an automotive retail dealership, who sought to certify a collective action on behalf of herself and all "nonmanagerial" employees at six separate locations. After class discovery was conducted, the plaintiff acknowledged that the proposed collective action would include some employees whom the defendants had classified as exempt from the FLSA's requirements and paid a fixed weekly salary, and others whom they had classified as non-exempt and paid on an hourly basis. *Id.* at *12. Nonetheless, the plaintiff argued that the collective action should be certified because her employer *had* a "common scheme" to deny overtime wages to all of its employees. *Id.* at *11.

In her decision, Judge McMahon concluded that the plaintiff and the potential opt-ins were not similarly situated for at least two reasons. First, any employees who had been treated as exempt would need to litigate the preliminary question of whether their classification was proper before turning to the question of their hours and pay. Employees who had been treated as non-exempt, on the other hand, would only need to litigate the quantum of relief to which they were entitled. *Id.* at *13. Second, the proposed collective action would have included "employees in a variety of roles, with a range of job duties," without the plaintiff having made any "showing that the work performed by all potential opt-ins [was] similar to her own." *Id.* (emphasis in original).

Here, unlike *Romero*, Kim seeks conditional collective action certification prior to discovery. Moreover, at least to the extent that Kim seeks to bring this action on behalf of kitchen staff members, there are no complicated issues regarding the other employees' job responsibilities. Indeed, the only employee whose job responsibilities potentially are in question is Kim himself. If he is shown to be a non-executive

---

**3.** Even if the Court could consider the Defendants' declarations, "statements gathered by an employer from its current employees are of limited evidentiary value in the FLSA context because of the potential for coercion." *Amador v. Morgan Stanley & Co. LLC*, No. 11 Civ. 4326(RJS), 2013 WL 494020, at *8 (S.D.N.Y. Feb. 7, 2013). Here, the Gonzalez declaration appears to be a preprinted form that Gonzalez completed simply by filling in blanks left for his name, job title, and hourly pay. The remainder of the affidavit contains boilerplate language, all of which can be summarized as stating "I am always paid accurately." (Gonzalez Decl. ¶ 5). What makes this truly strange is the fact that it is signed not only by Gonzalez, but by Morgenstern. Thus, even if the court could weigh the evidence, it would be inappropriate at this early stage to credit Gonzalez's declaration over Kim's declaration.

The payroll records submitted by the Defendants are no more compelling. Although the records do seem to suggest that certain kitchen staff members were paid at something other than a fixed weekly rate, they do not establish that the staff members were properly paid the statutory minimum wage plus any necessary overtime compensation, because they do not reflect the number of hours each employee worked each week.

employee who was paid a weekly salary simply because of his immigration status, he will be situated similarly to the other kitchen employees. If he had executive responsibilities, he likely will not be so situated. As in *Romero*, this is an issue that must be sorted out after some discovery, not now.

### 3. Scope of the Proposed Collective Action

■ Kim seeks conditional certification not only on behalf of all Goat Town kitchen workers, but also on behalf of every other non-exempt Goat Town employee, including porters, waiters, runners, bussers, and bartenders. Although Kim has shown that he is situated similarly to the other Goat Town kitchen staff members, he has not demonstrated a sufficient factual nexus between himself and the non-kitchen staff. Indeed, Kim concedes that, unlike the kitchen staff members, the other employees were paid at an hourly rate—albeit one that he alleges is below the minimum wage. (*See* Kim Decl. ¶ 5). Significantly, he does not allege that the Defendants paid these additional employees a fixed weekly salary or that they were denied overtime compensation. Thus, even if these employees were to pursue FLSA claims against the Defendants, the legal and factual theories under which they would proceed would be entirely different than those pressed by Kim and the other kitchen staff members.

For this reason, the collective action will be conditionally certified only on behalf of kitchen staff members employed by the Defendants over the past three years.

### B. Notice to Similarly–Situated Plaintiffs

Kim further requests court-facilitated notice of this action to all potential opt-in plaintiffs, as well as approval of his proposed FLSA notice and consent form.

■ The Supreme Court has recognized that the benefits of collective actions "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann–La Roche,* 493 U.S. at 170, 110 S.Ct. 482. District courts therefore are encouraged to "begin [their] involvement [in the notice process] early, at the point of the initial notice." *Id.* at 171, 110 S.Ct. 482. "By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative." *Raniere,* 827 F.Supp.2d at 327 (citing *Hoffmann–La Roche,* 493 U.S. at 170, 110 S.Ct. 482).

■ Here, court-facilitated notice is appropriate "to prevent erosion of claims due to the running statute of limitations, as well as to promote judicial economy." *Khamsiri,* 2012 WL 1981507, at *1. Kim's request for court-facilitated notice to all kitchen staff members employed by the Defendants therefore will be granted. Kim's request that the notice also be sent to other Goat Town employees is denied. This may require modification of Kim's proposed notice and consent form.

### C. Discovery of Names and Contact Information of Potential Opt–In Plaintiffs

Kim additionally requests that the Court direct the Defendants to produce the "names, title, compensation rate, period of employment, last known mailing addresses, email addresses and all known telephone numbers" of all putative class members employed by the Defendants within the past six years. (Pl.'s Mem. at 1). Although the Defendants have not opposed this request, Kim has not sought to certify a Rule 23 class under the NYLL. Instead, he simply seeks conditional certification of

a collective action under the FLSA. The maximum statute of limitations under that statute—applicable to wilful violations—is three years. 29 U.S.C. § 255. Kim's suit was filed on November 7, 2012. (ECF No. 1). Accordingly, because the FLSA limitations period is not tolled until a plaintiff opts in, *see* 29 U.S.C. § 256, November 7, 2009, is the "earliest possible date that a plaintiff in this case may have been last employed by [the D]efendants in order to have a timely claim under the FLSA," *Sexton v. Franklin First Fin., Ltd.*, No. 08 Civ. 04950(JFB)(ARL), 2009 WL 1706535, at *10 (E.D.N.Y. June 16, 2009). The Defendants therefore need only provide the requested information for kitchen staff who were employed on or after that date.

For all such employees, the Defendants shall produce to Kim a list (in Excel format, if that is reasonably available) setting forth their names, addresses, compensation rates, telephone numbers, and dates of employment. This information shall be produced within fourteen days from the date of this Memorandum Decision and Order.

### D. *Posting of Notice and Consent Forms*

Finally, Kim's counsel seeks court-ordered access to the Defendants' restaurant to post the notice of this action and to provide consent forms to those interested in opting in to the action. The Defendants do not oppose this request. "Such posting at the place of employment of potential opt-in plaintiffs is regularly approved by Courts." *Khamsiri*, 2012 WL 1981507, at *1 (citing *Ack v. Manhattan Beer Distribs., Inc.*, No. 11 Civ. 5582(CBA), 2012 WL 1710985, at *6 (E.D.N.Y. May 15, 2012); *Jacob*, 2012 WL 260230, at *10). This request therefore is granted.

### IV. *Conclusion*

For the reasons set forth above, Kim's motion for conditional collective action certification and related relief, (ECF No. 27), is granted in part and denied in part. Counsel shall confer and submit an agreed notice to the Court for its approval within fourteen days. if counsel are unable to agree on all of the wording for the notice, they shall submit within that same period their respective versions (in Word or Wordperfect format), together with a joint letter describing their differences.

SO ORDERED.