**Vincente JUAREZ, Plaintiff,**

v.

**449 RESTAURANT, INC., et al., Defendants.**

**No. 13–cv–6977 (AJN).**

United States District Court, S.D. New York.

Signed July 2, 2014.

Brian Scott Schaffer, Eric Joshua Gitig, Joseph A. Fitapelli, Fitapelli & Schaffer, LLP, New York, NY, for Plaintiff.

Arthur Harvey Forman, Arthur H. Forman, Esq., Forest Hills, NY, for Defendants.

*MEMORANDUM & ORDER*

ALISON J. NATHAN, District Judge:

In this action, Plaintiff Vincente Juarez brings various claims under the Fair La-

bor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, and New York law against Defendants 449 Restaurant, Inc. ("449 Restaurant"), 88 2nd Ave. Food Corp. ("Second Avenue"), Pirgos Food Corp. ("Pirgos"), and John Kapetanos. Currently before the Court are (1) Plaintiff's motion for an order granting conditional class certification, court-authorized notice, and expedited discovery pursuant to the FLSA, and (2) Defendants' cross-motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Dkt. Nos. 13, 22. For the following reasons, Plaintiff's motion is granted and Defendants' motion is denied.

## I. Background[1]

According to Plaintiff, Defendants operate a Manhattan restaurant chain known as the Moonstruck Diners. The chain's four locations are owned and operated by distinct legal entities, three of which are Defendants here: 449 Restaurant's diner is located at 449 Third Avenue, Second Avenue's diner is located at 88 Second Avenue, and Pirgos's diner is located at 244 Madison Avenue. Am. Compl. ¶¶ 24, 32, 39. The fourth Moonstruck Diner is located at 250 East 58th Street. *E.g.*, Pl. Ex. C. Plaintiff claims that Kapetanos, through the corporate entities associated with each Moonstruck Diner, operates the chain of restaurants "as a single integrated enterprise." Pl. Br. at 2.

Plaintiff worked as a cook at three of the Moonstruck Diners from "approximately 2007 to July 23, 2013." Pl. Decl. ¶ 2. He worked primarily at 449 Restaurant's diner on Third Avenue, but he states that he was sometimes directed by Kapetanos or other managers to work shifts at the Sec-

---

1. As noted in more detail below, the Court is limited to considering certain materials in deciding the two pending motions. This section is intended to provide background infor-
mation, not to convey or identify any operative facts or allegations on which the Court has relied in deciding the motions.

ond Avenue diner and the Pirgos diner. *Id.* ¶ 12.

Plaintiff initiated this action on October 2, 2013, and after Defendants filed a motion to dismiss, Plaintiff amended his complaint on November 22, 2013. Dkt. No. 12. In his Amended Complaint, Plaintiff alleges that during his time at the Moonstruck Diners, he was paid a flat weekly salary that neither adequately compensated him for his overtime hours, as required by the FLSA and the New York Labor Law (Counts I and II), *see* 29 U.S.C. § 207(a)(1); N.Y. Lab. Law §§ 650–665, nor included the "spread of hours" premium mandated by New York regulations (Count III), *see* N.Y. Comp.Codes R. & Regs. tit. 12, § 142–2.4. He also brings two claims alleging violations of New York statutes that require employers to furnish their employees with wage notices and statements (Counts IV and V), *see* N.Y. Lab. Law § 195(1), (3). He brings his FLSA claim on behalf of himself and other "similarly situated" employees, pursuant to the FLSA's collective action mechanism, *see* 29 U.S.C. § 216(b), and his state law claims as part of a putative class action under Federal Rule of Civil Procedure 23. Am. Compl. ¶¶ 9–10.

Plaintiff filed his motion for conditional certification, court-authorized notice, and expedited discovery on November 26, 2013. Dkt. No. 13. Along with their opposition brief, Defendants filed a cross-motion for judgment on the pleadings on December 30, 2013. Dkt. No. 22. On January 13, 2014, Plaintiff filed a brief in further support of his own motion and in opposition to Defendants' cross-motion; Defendants did not file a reply brief with respect to their cross-motion, so both motions were fully submitted as of January 13.

Pursuant to the case management plan and scheduling order governing this action, Dkt. No. 21, fact discovery was set to close on April 21, 2014. But at the parties' request, the Court has adjourned that deadline with respect to discovery related to the Second Avenue and Pirgos diners until the two pending motions are decided. Dkt. Nos. 31, 33.

## II. Defendants' Motion for Judgment on the Pleadings

The Court will address Defendants' Rule 12(c) motion for judgment on the pleadings first. Dkt. No. 22. Defendants argue that Plaintiff's claims against Second Avenue and Pirgos should be dismissed for failure to state a claim on which relief can be granted. For the following reasons, Defendants' motion is denied.

### A. Legal Standard

Under Rule 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed." Courts evaluate such motions under the same standards applicable to motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *Hayden v. Paterson,* 594 F.3d 150, 160 (2d Cir.2010). Thus, to survive Defendants' motion, Plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). While well-pleaded factual allegations must be accepted as true, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (alteration in original) (quoting Fed. R.Civ.P. 8(a)(2)). Therefore, in assessing whether a pleading states a plausible claim to relief, courts disregard legal conclusions

and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. The Court may consider only the complaint itself and documents that are attached to it, incorporated by reference, or on which the complaint heavily relies. *In re Thelen LLP,* 736 F.3d 213, 219 (2d Cir.2013).

## B. Discussion

Defendants contend that Plaintiff has not adequately pled that Second Avenue and Pirgos violated the FLSA's overtime provisions because he does not allege that he ever worked more than 40 hours in any week at those two Defendants' diners. As a result of this failure, Defendants argue, Plaintiff does not plausibly allege entitlement to FLSA overtime pay for his work at those diners.[2] Def. Opp. at 10. The Court disagrees.

The overtime provision of the FLSA provides that "no employer shall employ any of his employees ... for a workweek longer than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Defendants do not contest the adequacy of Plaintiff's allegations that he worked more than 40 hours per week or that he was not lawfully compensated for that work. Def. Opp. at 9–12. Instead, the question is which Defendants are responsible under the FLSA for paying Plaintiff sufficiently for the hours that he worked—in other words, who counts as his "employer." As relevant here, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee," an "employee" is "any individual employed by an employer," and to "employ" means "to suffer or permit to work." 29 U.S.C. § 203(d), (e)(1), (g); *Barfield v. N.Y.C. Health & Hosps. Corp.,* 537 F.3d 132, 140 (2d Cir.2008); *see also Irizarry v. Catsimatidis,* 722 F.3d 99, 103 (2d Cir.2013) ("The statute nowhere defines 'employer' in the first instance."). The Second Circuit has overseen a proliferation of multi-factor tests that aid in determining who counts as an employer, depending on the circumstances. *See, e.g., Barfield,* 537 F.3d at 141–43.

Plaintiff urges the Court to apply the "single integrated enterprise" test that numerous district courts have used to assess whether a group of distinct but closely affiliated entities should be treated as a single employer for FLSA purposes. *E.g., Bravo v. Established Burger One, LLC,* No. 12–cv–9044 (CM), 2013 WL 5549495, at *8 (S.D.N.Y. Oct. 8, 2013); *Perez v. Westchester Foreign Autos, Inc.,* No. 11–cv–6091 (ER), 2013 WL 749497, at *7 (S.D.N.Y. Feb. 28, 2013); *Chen v. TYT East Corp.,* No. 10–cv–5288 (PAC), 2012 WL 5871617, at *3 (S.D.N.Y. Mar. 21, 2012). Under this standard, courts consider (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. *Perez,* 2013 WL 749497, at *7. The following application of these four factors leads the Court to conclude that Plaintiff has sufficiently alleged that Defendants acted as a single integrated enterprise.

Stripping away its various conclusory (or arguably conclusory) statements, the Amended Complaint still contains well-pleaded factual allegations that "the Moon-

---

**2.** Defendants do not separately address Plaintiff's state law claims, although they contend that "all claims" against them should be dismissed. Def. Opp. at 9. Because the Court rejects their arguments for dismissal, the precise scope of their motion need not be addressed further.

struck Diners are a popular restaurant chain," Am. Compl. ¶ 2; that Kapetanos owns, manages, and oversees operations at all of the Moonstruck Diners, *id.* ¶ 3; that the diners "maintain the same or similar interior décor, use the same or similar menus, and require non-exempt workers to wear the same uniform," *id.*; and that two of the diners share a website, *id.* These factual allegations plausibly suggest that the corporate Defendants had interrelated operations (their website, decor, menus, and uniforms), common management (Kapetanos), and common ownership or financial control (also Kapetanos). Plaintiff also makes several allegations suggesting centralized control of labor relations. For example, in addition to his core allegations of unlawful pay practices—which suggest that employees at all three diners were subject to the same policies, *id.* ¶¶ 4–8—Plaintiff alleges that he worked at three locations, *id.* ¶ 12; that non-exempt workers "are directed and/or permitted ... to perform work at multiple Moonstruck Diner locations without retraining," *id.* ¶ 3; *see also id.* ¶¶ 21, 48; and that Kapetanos himself, who allegedly controlled all of the diners, hired Plaintiff, "was the individual [he] spoke to about pay increases," and provided employees with their weekly wages, *id.* ¶¶ 46–49.

Taken together, these factual allegations are sufficient to plead that Defendants operated as a single integrated enterprise, and thus qualify as a single statutory "employer" under the FLSA. *See Bravo*, 2013 WL 5549495, at *8 (finding similar allegations sufficient). As a result, the fact that Second Avenue and Pirgos are distinct entities does not insulate them from liability at this stage, because all Defendants that compose the enterprise count as Plaintiff's employer. Second Avenue and Pirgos are therefore responsible for the hours that he worked for the whole enterprise, and not just at their individual diners.[3] *See, e.g., Arculeo v. On–Site Sales &· Mktg., LLC,* 425 F.3d 193, 198 (2d Cir.2005) (where single-integrated-enterprise theory applies, courts may impose liability for a violation "not only on the nominal employer but also on another entity comprising part of the single integrated employer"). Accordingly, Defendants' motion for judgment on the pleadings as to Second Avenue and Pirgos is denied.

### III. Plaintiffs Conditional Certification Motion

Plaintiff moves for an order granting conditional · certification, court-authorized notice, and expedited discovery pursuant to 29 U.S.C. § 216(b). Dkt. No. 13. Plaintiff seeks to send notice of this action to "all individuals who have worked as cooks, food preparers, dishwashers, and other non-exempt workers at the Moonstruck Diners located at 449 Third Avenue, 88 Second Avenue, and 244 Madison Avenue in New York City since October 2, 2007." Pl. Br. at 11. Defendants contest

---

**3.** The Court notes that there is some disagreement among district courts with respect to whether the single-integrated-enterprise theory, which was developed in the context of the National Labor Relations Act, *see, e.g., Radio & Television Broad. Technicians Local Union 1264 v. Broad. Serv. of Mobile, Inc.,* 380 U.S. 255, 256–57, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965) (per curiam), is appropriate in the FLSA context. *See Hart v. Rick's Cabaret Int'l, Inc.,* 967 F.Supp.2d 901, 940 n. 16 (S.D.N.Y.2013) (declining to apply the single-integrated-enterprise test); *Gorey v. Manheim Servs. Corp.,* 788 F.Supp.2d 200, 210 (S.D.N.Y.2011) (same); *Lopez v. Acme Am. Envt'l Co.,* No. 12–cv–511 (WHP), 2012 WL 6062501, at *4 (S.D.N.Y. Dec. 6, 2012) (similar). The Second Circuit has not spoken on the question. *Chen,* 2012 WL 5871617, at *3. Defendants here never argue that the Court should reject the single-integrated-enterprise test, and given the early stage of these proceedings, the Court need not address this issue further at this juncture.

Plaintiff's motion insofar as it requests that notice be sent to employees at the Second Avenue and Pirgos diners. Def. Opp. at 6–9. For the following reasons, Plaintiff's motion is granted insofar as he seeks conditional certification and court-authorized notice with respect to employees of all three diners. In light of this resolution, the Court will reserve decision on the parties' arguments concerning the text and dissemination of the notice until the parties have met and conferred and attempted to resolve their disagreements.

## A. Legal Standard

 The FLSA authorizes workers to sue on behalf of both themselves and "other employees similarly situated." 29 U.S.C. § 216(b). District courts in FLSA actions have discretion to implement this collective mechanism by " 'facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.,* 624 F.3d 537, 554 (2d Cir. 2010) (quoting *Hoffmann–La Roche Inc. v. Sperling,* 493 U.S. 165, 169, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)). In exercising this discretion, district courts in this Circuit use a two-step approach. First, courts will make "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Id.* at 555. Second, after additional plaintiffs have opted in, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Id.* If they are not, then the action may be "de-certified." *Id.*

Plaintiff's motion involves the initial determination of whether to send notice to potential opt-in plaintiffs.[4] To demonstrate the existence of other "similarly situated" workers at this stage, Plaintiff need only make a " 'modest factual showing' that [he] and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.' " *Myers,* 624 F.3d at 555 (quoting *Hoffmann v. Sbarro, Inc.,* 982 F.Supp. 249, 261 (S.D.N.Y.1997) (Sotomayor, J.)). He can do this through evidence that he and other employees have similar positions, job requirements, pay provisions, and the like; there must be an "identifiable factual nexus which binds [him] and potential class members together as victims of a particular practice." *Ouedraogo v. A–1 Int'l Courier Serv., Inc.,* No. 12–cv–5651 (AJN), 2013 WL 3466810, at *2 (S.D.N.Y. July 8, 2013) (quoting *Ali v. N.Y.C. Health & Hosps. Corp.,* No. 11–cv–6393 (PAC), 2013 WL 1245543, at *3 (S.D.N.Y. Mar. 27, 2013)) (internal quotation mark omitted).

 Although Plaintiff's burden at this stage is low, "it is not non-existent," and he cannot rely upon "unsupported assertions." *Id.* (quoting *Ali,* 2013 WL 1245543, at *2). In assessing the adequacy of a plaintiff's showing, district courts look to pleadings, affidavits, and declarations, but often authorize notice based "solely on the personal observations of one plaintiff's affidavit." *Hernandez v. Bare Burger Dio Inc.,* No. 12–cv–7794 (RWS), 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) (collecting cases). At this early stage, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility

---

**4.** "[W]hile courts speak of 'certifying' a FLSA collective action, it is important to stress that the 'certification' we refer to here is only the district court's exercise of the discretionary power ... to facilitate the sending of notice to potential class members." *Myers,* 624 F.3d at 555 n. 10.

determinations." *Lynch v. United Servs. Auto. Ass'n,* 491 F.Supp.2d 357, 368 (S.D.N.Y.2007).

## B. Discussion

■ Defendants concede that Plaintiff has carried his burden with respect to workers at 449 Restaurant's diner, where he "primarily worked." Pl. Decl. ¶ 12; *see* Def. Opp. at 5. Indeed, Plaintiff's declaration states that while he worked more than 40 hours per week and more than 10 hours per day, "the restaurants never monitored or recorded the hours I worked," and he was paid a set weekly salary that did not include overtime or spread-of-hours compensation. PL Decl. ¶¶ 3–8. Other workers he knew, who also worked more than 40 hours weekly and 10 hours daily, were paid in the same fashion. *Id.* ¶ 6. This evidence suffices, at this stage, to suggest that Plaintiff and other employees at 449 Restaurant's diner were subject to the same allegedly unlawful pay policies.

However, Defendants dispute that Plaintiff has demonstrated a sufficient "factual nexus" between himself and workers at the Second Avenue and Pirgos diners. Def. Opp. at 5. Plaintiff's showing is insufficient, Defendants contend, because he did not work extensively at these two diners and because his "bare belief" that Kapetanos owns and manages all three diners does not suffice to demonstrate that employees at all three were subject to a "common policy or plan." *Id.* at 7. The Court disagrees.

As an initial matter, the extent to which Plaintiff himself worked at the other two diners is not dispositive; what matters is whether he and employees at those restaurants were "similarly situated" with respect to the FLSA violations alleged in the complaint. Courts often authorize notice to employees of restaurant locations where the named plaintiff did not work at all, as long as there is sufficient evidence that those employees were subject to the same allegedly unlawful policies. *E.g., Mendoza v. Ashiya Sushi 5, Inc.,* No. 12–CV–8629 (KPF), 2013 WL 5211839, at *5 (S.D.N.Y. Sept. 16, 2013); *Lamb v. Singh Hospitality Grp., Inc.,* No. 11–cv–6060 (MKB), 2013 WL 5502844, at *3–5 (E.D.N.Y. Sept. 30, 2013); *Cano v. Four M Food Corp.,* No. 08–CV–3005 (JFB)(AKT), 2009 WL 5710143, at *7 (E.D.N.Y. Feb. 3, 2009). Therefore, in this case, the Court must focus on whether Plaintiff has provided sufficient evidence that employees at all three Moonstruck Diners were, in fact, subject to the same unlawful policies.

■ Given that Plaintiff and the potential opt-in plaintiffs must be similarly situated "with respect to whether a FLSA violation has occurred," *Myers,* 624 F.3d at 555, the Court must ask whether there is sufficient evidence that employees at the Second Avenue and Pirgos diners were subject to the same violations that Plaintiff claims to have been subject to. The FLSA defines violations in terms of employers and employees; for overtime claims like Plaintiff's, for example, the statute provides that "no *employer* shall employ any of his employees ... for a workweek longer than forty hours unless such employee" is lawfully compensated. 29 U.S.C. § 207(a)(1) (emphasis added). Thus, multiple groups of employees logically cannot have been subject to the same FLSA violation unless the allegedly unlawful pay policies applicable to them were set by the same employer.

Here, Plaintiff has offered sufficient evidence that employees at the three Moonstruck Diners shared the same employer, despite the fact that the three locations are owned by different entities. As noted, distinct entities can be treated as a single "employer" under the FLSA if they qualify

as a "single integrated enterprise."[5] *See, e.g., Lamb,* 2013 WL 5502844, at *4–5 (applying single-integrated-enterprise test to determine whether court-authorized notice should be sent to multiple restaurants). Factors to be considered in this analysis include (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. *Id.* at *4.

Defendants claim that Plaintiff's only evidence suggesting an integrated enterprise is his "bare belief" that Kapetanos owns and manages the three locations, Def. Opp. at 7, but that is not accurate. Plaintiff also describes specific similarities between the restaurants, such as the facts that the "uniforms worn by cooks and similar workers were the same," that the diners shared a website, and that the interior design and menus were similar between the three diners. Pl. Decl. ¶¶ 13, 15; *see also* Pl. Ex. D. And he has submitted documents from New York's Division of Corporations showing that Kapetanos is the Chief Executive Officer of two of the three corporate Defendants, as well as the non-party East 58th Street diner. PL Ex. C. In light of Plaintiffs minimal burden at this stage, the Court concludes all of this evidence together is sufficient to suggest that the three diners were operated as a single integrated enterprise, and thus that employees of all three diners shared a single employer under the FLSA.

Arguably, that would suffice to permit an inference that unlawful pay policies implemented at 449 Restaurant's diner extended to the other two locations—and thus suggest that employees at all three diners were subject to "a common policy or plan"—because the fact that the three diners were run as an integrated enterprise might reasonably imply that they had uni-

form wage-and-hour policies. *See Cheng Chung Liang v. J.C. Broadway Rest., Inc.,* No. 12–cv–1054 (TPG), 2013 WL 2284882, at *1 (S.D.N.Y. May 23, 2013) (holding that plaintiff's testimony about pay practices at one location "provides adequate evidence to indicate that employees at other restaurants controlled by defendants may be similarly situated"); *Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.,* No. 12–cv–265 (PAE), 2012 WL 1981507, at *1 & n. 1 (S.D.N.Y. June 1, 2012) (shared signage, entrance, and address were "sufficient indicia of the possibility of a common policy or plan among … three restaurants"). But the fact that Plaintiff worked at all three locations lends further support to this conclusion because it implies that the three diners treated their employees as part of a single pool. Plaintiff states that he "did not need to reapply" in order to work at the other diners, and he "was not given any additional training." Pl. Decl. ¶ 12. And although he worked at all three locations, he does not differentiate among them with respect to the pay policies he was subject to. *Id.* ¶¶ 2–10. This is enough, at this stage, to suggest that workers at all three diners were subject to the same pay practices. *See Mendoza,* 2013 WL 5211839, at *5 (evidence that other locations were printed on plaintiff's manager's business card and that other locations' employees were sometimes sent to plaintiff's location provided a sufficient "factual nexus").

Defendants' arguments to the contrary are not persuasive. For instance, they point to an affidavit from Kapetanos indicating, most significantly, that he "has no authority over the employees" at the two diners in which Plaintiff did not primarily work. Kapetanos Aff. ¶ 7; *see* Def. Opp. at 8. But to the extent that this testimony

---

**5.** Again, in this procedural posture, the Court assumes without deciding that the single-inte-grated-enterprise theory is available under the FLSA. *See supra* note 3.

372

undermines the proposition that Kapeta-
nos *himself* is a statutory "employer" with
respect to employees at all three diners, *cf.*
*Irizarry,* 722 F.3d at 105–17 (examining
whether company's principal qualified as
an employer under the FLSA), that does
not necessarily bear directly on whether
the three diners were a single integrated
enterprise. In any event, Kapetanos's tes-
timony raises a factual issue that is inap-
propriate for resolution at this stage. *See*
*Kim v. 511 E. 5th St., LLC,* 985 F.Supp.2d
439, 446 (S.D.N.Y.2013) ("[I]f the plaintiff's
allegations are sufficient on their face to
support conditional certification, a defen-
dant may not defeat the plaintiff's motion
by presenting conflicting factual asser-
tions."). The same is true for the affida-
vits submitted by Despina and Theodore
Gailas, the managers of the Pirgos and
Second Avenue diners, respectively.

Nor is the case law that Defendants cite
inconsistent with the Court's conclusion.
In *Laroque v. Domino's Pizza, LLC,* 557
F.Supp.2d 346 (E.D.N.Y.2008), unlike in
this case, there was no showing that the
five additional locations to which the plain-
tiff sought to send notice were under com-
mon ownership or control. *See id.* at 355–
56. As a result, the plaintiff could not rely
on an inference that the stores had similar
employment policies because the workers
there shared an employer, and was there-
fore limited to "thin factual support" for
his claims about the situations of the other
locations' employees. *Id.* The plaintiffs in
*Monger v. Cactus Salon & SPA's LLC,*
No. 08–cv–1817, (FBW)(DW), 2009 WL
1916386 (E.D.N.Y. July 6, 2009), offered no
evidence at all with respect to the other
locations' pay policies. *Id.* at *2. That is

not true here; the fact that Plaintiff does
not have direct knowledge of the policies in
place at all three Moonstruck Diners does
not prevent him from meeting his minimal
burden with circumstantial evidence—such
as a corporate structure tending to sug-
gest common ownership and control, *cf.*
*Cheng Chung Liang,* 2013 WL 2284882, at
*1, or testimony that he worked at the
other diners, *cf. Mendoza,* 2013 WL
5211839, at *5. The third case that Defen-
dants cite is far afield from this one factu-
ally: the court declined to send notice to a
nationwide class because the plaintiff had
no evidence supporting her theory that
managers' incentives to reduce overtime
actually caused widespread FLSA viola-
tions. *See Eng–Hatcher v. Sprint Nextel*
*Corp.,* No. 07–cv–7350 (BSJ), 2009 WL
7311383, at *3–4 (S.D.N.Y. Nov. 13, 2009).
The court distinguished cases with "a
much more modest class composition," in
which it is easier to impute a plaintiff's
own experience to other employees. *Id.* at
*5.[6]

In sum, Plaintiff has carried his burden
at this stage of demonstrating a "factual
nexus" uniting him with employees at all
three Moonstruck Diner locations at which
he worked. Accordingly, the Court con-
cludes that notice should be sent to em-
ployees of all three diners.

## C. Plaintiffs Proposed Notice

█ Having concluded that court-au-
thorized notice should be sent to employ-
ees of all three diners, the Court turns to
the form of such notice and its method of
distribution. "By monitoring preparation
and distribution of the notice, a court can

**6.** The *Laroque* and *Eng–Hatcher* courts also
declined to credit the plaintiffs' evidence in
part because it was rebutted by other affida-
vits submitted by the defendants. *See La-*
*roque,* 557 F.Supp.2d at 355–56; *Eng–Hatch-*
*er,* 2009 WL 7311383, at *4. *Contra, e.g., Kim,*

985 F.Supp.2d at 446 (a defendant cannot
"defeat the plaintiff's motion by presenting
conflicting factual assertions"); *Lynch,* 491
F.Supp.2d at 368 (courts do not "resolve fac-
tual disputes" at the initial notice-authoriza-
tion stage).

ensure that it is timely, accurate, and informative. Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed." *Hoffmann–La Roche,* 493 U.S. at 172, 110 S.Ct. 482. "[T]he district court has discretion regarding the form and content of the notice." *In re Penthouse Exec. Club Comp. Litig.,* No. 10–cv–1145 (NRB), 2010 WL 4340255, at *5 (S.D.N.Y. Oct. 27, 2010).

Plaintiff has submitted a proposed notice, PL Ex. E, and Defendants have lodged numerous objections to both the notice itself and Plaintiffs proposed method of disseminating it, Def. Opp. at 12–18. Rather than address these objections seriatim, the Court directs the parties to meet and confer and make a good-faith effort to agree on both the text of the proposed notice and its method of dissemination. *See Ouedraogo,* 2013 WL 3466810, at *3 (ordering parties to meet and confer and attempt to agree on proposed order); *Cohen v. Gerson Lehrman Grp., Inc.,* 686 F.Supp.2d 317, 331–32 (S.D.N.Y.2010) (same). By July 18, 2014, the parties must submit a joint letter to the Court of no more than eight pages. The letter should (1) represent that the parties have met and conferred, (2) identify the precise issue(s) on which disagreement remains, and (3) set forth each side's respective position on those issues. The parties should cite case law from courts in this Circuit that supports their arguments. After resolving any contested issues, the Court will ask the parties to submit a joint proposed notice that reflects such resolution.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion is granted and Defendants' cross-motion is denied. This resolves Docket Nos. 13 and 22.

As the Court has already discussed, the parties must submit a joint letter by July 18, 2014 concerning the notice to be sent to potential opt-in plaintiffs. By that same date, the parties are also directed to submit a proposed schedule for the completion of discovery.

SO ORDERED.